IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Georgia Gladney, | ) | |
| | ) | |
| Plaintiff, | ) | C/A NO. 3:08-3251-CMC |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| Garda Security Services, UnumProvident Corp., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on Defendants' motion for summary judgment. For the reasons set forth below, the court finds that Plaintiff's state law claims are preempted by the Employee Retirement Income Security Act of 1976, 29 U.S.C. § 1001 *et seq.* ("ERISA"). The court further finds that Plaintiff's claims would fail as a matter of law even if properly converted to ERISA claims because Plaintiff's husband (the participant in the employee benefit plan at issue in this action) died prior to completing the waiting period for life insurance benefits as set forth in the governing plan documents. The court, therefore, grants Defendants' motion on the merits.[1]

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

---

[1] The present motion was designated as a "Memorandum in Support of Judgment." Dkt. No. 11. This designation is consistent with the procedures generally followed in this court for claims under ERISA. *See* Dkt. No. 5 (Specialized Case Management Order). Plaintiff has not, however, agreed that all claims are governed by ERISA. *See* Dkt. No. 18-3. Neither has she agreed to resolution of all claims on the written record. *Id.* For these reasons, the court deems Defendants' memorandum as a motion for summary judgment. The court so advised the parties immediately after the memorandum was filed and allowed for briefing consistent with treatment of the matter as a motion for summary judgment. *See* Dkt. No. 12.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the nonmoving party has the ultimate burden of proof on an issue, the moving party must identify the parts of the record that demonstrate the nonmoving party lacks sufficient evidence. The nonmoving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## BACKGROUND

**Parties.** Plaintiff, Georgia Gladney ("Gladney"),[2] is the widow of Lemuel McNeal ("McNeal"). Through this action, Gladney seeks life insurance benefits she asserts were available to McNeal as a consequence of his employment with Defendant Garda Security Services ("Garda Security"). Those life insurance benefits were (or would have been) provided through a group

---

[2] For purposes of this order, the court uses Plaintiff's name as given in the captions of both the original and amended complaints: "Georgia Gladney." She is identified in the same manner in both state court civil cover sheets as well as in the jurisdictional statements in both complaints. The court, nonetheless, recognizes that Plaintiff has also identified herself as "Georgia R. Gladney-McNeal" in the facts sections of both complaints as well as in the original and amended summonses.

2

insurance policy issued by Defendant UnumProvident Corp. ("Unum").[3]

**Claim for Benefits.**  McNeal began his employment with Garda Security on February 13, 2008.  Gladney Aff. ¶ 4 (Dkt. No. 18-2).  He died seven days later, on February 20, 2008.  *Id.* ¶ 9.  Since McNeal's death, Gladney has made several attempts to file a claim for life insurance benefits with or through Unum and Garda Security.  Gladney Aff. ¶¶ 14-21.  When Gladney contacted Unum after McNeal's death, she was told that McNeal was not covered because Garda Security had not paid the premiums for his coverage.  Gladney Aff. ¶ 16.  When Gladney contacted Garda Security, its representative conceded that Garda Security had "failed to file the insurance."  Gladney Aff. ¶ 17.  Although the Garda Security representative suggested that "maybe they could do something as a company," that suggestion did not result in coverage or, presumably, any other substitute payment.  As a consequence, no claim was ever filed with Unum and there is no administrative record.

**Life Insurance Benefits**.  The benefits at issue are summarized in a "Garda Benefits Guide" ("Benefits Guide") which Gladney filed in opposition to the present motion.  Dkt. No. 18-3.  Although this document purports to summarize various benefits, it includes the following disclaimer on the table of contents page:

> The availability and amount of all benefits are governed by the legal documents involved.  All plans are not available in all states.  This statement is not a legal document and in no way constitutes a contract.  The material contained in this

---

[3]  Defendants' opening memorandum explains that: "Plaintiff's amended complaint improperly names UnumProvident Corp. as a party. The proper defendant is *Unum* Life [I]nsurance Company of America, who fully insured the Garda life insurance plan." Dkt. No. 11 at 1 (emphasis added).  By contrast, in their responses to Local Rule 26.01 interrogatories, Defendants explained that "Defendant UnumProvident Corp. is not properly identified. The proper Defendant is *Provident* Life and Accident Insurance Company." Dkt. No. 2 (emphasis added).  Defendants also explained that: "Provident Life and Accident Insurance Company of America is a subsidiary of UNUM Group." *Id.* (emphasis added).  Given the resolution of this matter, the court need not resolve this corporate identity crisis, but will refer to this Defendant as "Unum" for purposes of this order.

> booklet is NOT an official Summary Plan Description (SPD) for any of the benefit programs. In the event of a conflict between the information in this Manual and the official plan documents, policies, booklets, agreements and SPD, these official documents governing the applicable benefits program will control. Actual details and the interpretation of the benefit programs are contained in and are subject to the official plan documents, policies, and other booklets and arrangements governing the benefit programs, and nothing contained in the Manual shall be construed to amend or alter any of the benefit programs.

Dkt. No. 18-4 at 2.[4]

The following similar disclaimer is found on page one of the Benefits Guide:

> **Benefit Plan Guidelines**
>
> The GARDA Employee Benefits Program is summarized briefly in this packet. Complete details and limitations are contained in the Summary Plan Descriptions. The availability and amount of all benefits are governed by the legal documents involved. This statement is not a legal document and in no way constitutes a contract.

Dkt. No. 18-4 at 3.

This page also includes a reference to benefits which are automatically provided to employees, whether or not they take action to secure other available benefits. The life insurance benefits listed in this section are the benefits Gladney seeks through the present action:

> **What Happens if You Don't Enroll**
>
> If you are a newly eligible employee enrolling in Garda benefits for the first time, you have 30 days from your hire date or date in an eligible status to enroll in benefits. If you do not enroll during this 30 day period, you will automatically be placed in the following coverages:
>
> •     Medical, Dental, and Vision: Default to **NO COVERAGE (*Waived*)**[;]
> •     Basic Life and Basic AD&D Insurance: Default to **$25,000 of coverage**[.]

---

[4] The Benefits Guide summarizes a broad range of available benefits including: (1) a "limited benefit medical plan"; (2) a dental plan; (3) a vision plan; (4) a group term life and accidental death and disability insurance plan; (5) flexible spending accounts; (6) a 401(k) savings plan; (7) additional "voluntary benefits" available for purchase for critical illness, whole life insurance, and short term disability.

4

> You will not be enrolled in any other benefit plans and you **will not** have another chance to enroll or make any changes to your benefits until the next Annual Enrollment period (Spring 2008), unless you experience a qualified life event.

Dkt. No. 18-4 at 3 (emphasis in original).

Life insurance benefits are again referenced on a single page in the Benefits Guide. Dkt. No. 18-4 at 9. This page first describes the "Basic Employer Paid Insurance" as follows: "Employee Life Option: $25,000." The remainder of the page lists additional life insurance available on the life of the employee, spouse and children.

Nowhere in the Benefits Guide is there any indication of when life insurance benefits become effective. That is, there is neither a reference to a waiting period nor to an immediate effective date. Instead, the Benefits Guide is silent on this point. Gladney has proffered no other evidence germane to the effective date of McNeal's life insurance benefits.[5]

Defendants, by contrast, have submitted copies of documents represented to be the governing Plan and Summary Plan Description ("SPD"). Dkt. No. 11-2; Dkt. No. 27 at 66-73 ((Bates No. UASP00065-72).[6] Plaintiff does not challenge the authenticity, completeness, or applicability of

---

[5] In her affidavit, Gladney refers to a "2008 Benefits Enrollment Confirmation Statement" which she asserts McNeal received and which "contained . . . confirmation regarding the Basic Life Insurance of $25,000 at no cost." Gladney Aff. ¶ 6. She does not, however, provide a copy of that document. Neither does she suggest that it contained any statement regarding effective dates of the various benefits available to Garda Security employees.

Gladney also asserts in her affidavit that her "husband was informed that there was no 30 day waiting period that the life insurance was affective [sic] the date of employment." Gladney Aff. ¶ 23. She does not, however, provide any basis on which the court might find this statement to be admissible under Rules 802-804 of the Federal Rules of Evidence (hearsay rule and exceptions). In any event, such an oral assurance would be insufficient to modify the terms of a written plan. *See infra* at 10-11 (discussing estoppel theory).

[6] As explained in the affidavit of William T. Bradley, II, the pages which make up the SPD are also incorporated into the complete Plan document. *See* Dkt. No. 25 (affidavit) & 27 at 2-76 (exhibit A to affidavit). The SPD itself incorporates the applicable certificates of coverage which are found at Exhibit B to Bradley's affidavit. *See* Dkt. No. 25-2 though 25-5. *See also* Dkt. No. 11-2 at 14 (explaining that "The above items are only highlights of this plan. For a full description of

5

these documents. The first substantive page of the Plan is titled "Benefits at a Glance." This page includes the following critical provision:

> **WAITING PERIOD:**
>
> For employees in an eligible group on or before January 1, 2006 [the effective date of the Plan]: None.
>
> For employees entering an eligible group after January 1, 2006: *First of the month coincident with or next following 30 days of continuous active employment*.

Dkt. No. 11-2 at 5 (emphasis added).[7] A later section of the Plan document (headed "General Provisions") includes the following explanations:

> **WHEN ARE YOU ELIGIBLE FOR COVERAGE?**
>
> If you are working for your Employer in an eligible group, *the date you are eligible for coverage is the later of*:
>
> – the plan effective date; or
> – *the day after you complete your waiting period*.
>
> **WHEN DOES YOUR LIFE INSURANCE COVERAGE BEGIN?**
>
> **Group 1**
>
> \* \* \*
>
> Your Employer pays 100% of the cost of your coverage under the basic benefit. *You will be covered at 12:01 a.m. on the date you are eligible for coverage.*
>
> \* \* \*
>
> **Group 2**
>
> When you first become eligible for coverage, you may apply for any one basic benefit option. If you do not apply for a basic benefit option you will automatically be covered under Option C.

---

your coverage, continue reading your certificate of coverage section."); Dkt. No. 11-2 at 28-29 ("Certificate Section" and "General Provisions").

[7] Each of the Certificates of Coverage proffered by Defendant (one of which would have applied to McNeal as an employee of Garda) has an identical explanation of the waiting period. *See, e.g.*, Dkt No. 25-2 at 3.

6

> *\* \* \**
>
> *Your Employer pays 100% of the cost of your coverage under the basic benefit. You will be covered under the basic benefit at 12.01 a.m. on the later of*:
>
> – *the date you are eligible for coverage*; or
> – the date Unum approves your evidence of insurability form, if evidence of insurability is required.

Dkt. No. 11-2 at 30 (emphasis added).[8] *See also* Dkt. No. 11-2 at 65 (defining "Waiting Period" as "the continuous period of time (shown in each plan) that you must be in active employment in an eligible group before you are eligible for coverage under a plan.").

## DISCUSSION

**I.      ERISA Preemption of All Claims**

Although Gladney has pled only state law claims, she conceded in response to the court's specialized interrogatories that her claim for benefits (pursued against Unum) is preempted by the Employee Retirement Income and Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). The court will, therefore, construe her claim for benefits as a claim under 29 U.S.C. § 1132(a)(1)(B).[9]

Despite conceding that ERISA governs the benefits claim, Glandney maintains that she may proceed under state law against Garda Security for its failure to secure the promised benefits for McNeal. The court disagrees. The claims against Garda Security (for failure to secure coverage), while of a somewhat different nature than the claims against Unum (for failure to pay benefits), are equally dependent on the existence and terms of the employee benefit plan. This is because Garda

---

[8] The parties have not provided the court with information as to whether McNeal was a participant in Group 1 or Group 2. The critical provisions are, however, the same as to both groups.

[9] Gladney has not filed a second amended complaint consistent with this concession. She did, however, indicate in her answers to specialized interrogatories, that she was "not against amendment of the pleadings if necessary following court orders." Other than through the present motion, Defendants have not sought to dismiss Gladney's state law claims.

7

Security's obligation (if any) to secure life insurance coverage for McNeal arose out of and is controlled by that plan. It follows that ERISA preempts any claim against Garda Security for failing to secure plan benefits, regardless of whether the claim sounds in contract or tort.[10] *See generally Shaw v. Delta Airlines, Inc.* 463 U.S. 85, 96-97 (1983) ("The phrase 'relates to' [in ERISA's preemption provisions] is given a broad common sense meaning '[a] law relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan."); *Griggs v. E.I. Dupont De Nemours & Co.,* 237 F.3d 371, 378 (4th Cir. 2001) ("When a cause of action . . . is 'premised on' the existence of an employee benefit plan so that 'in order to prevail, a plaintiff must plead and the court must find, that an ERISA plan exists,' . . . ERISA preemption will apply.").

**II.     Failure of Condition Precedent and Failure to Exhaust Plan Remedies.**

The bulk of Defendants' memorandum in support of judgment focuses on Gladney's alleged failure to file a claim or exhaust plan remedies. Dkt. No. 11 at 2-5. This basis for judgment cannot be resolved on summary judgment in light of Gladney's affidavit in which she states that she made repeated efforts to file a claim with Unum or Garda Secuirty but that each effort was rebuked.[11]

**III.    Merits – Failure to Meet Waiting Period Requirement**

Although dealt with only briefly in their motion, Defendants' merits argument is more

---

[10] The language used in the original and amended complaints suggests that Gladney is proceeding against Garda Security on a negligence theory and against Unum on a contract theory. In her opposition memorandum, Gladney characterizes her claim against Garda Security as a contract claim. The characterization of the claims under state law is not, however, determinative because ERISA preempts all state law theories of recovery to the extent the claims "relate to" an ERISA-governed employee benefit plan. *See generally Makar v. Health Care Corp of Mid Atlantic,* 872 F.2d 80, 82 (4th Cir. 1989) ("after [*Pilot Life Ins. Co. v. Dedeaux,* 489 U.S. 41 (1987)] any contention that the state law claims here are not preempted by ERISA would be frivolous").

[11] Unlike many of the statements in her affidavit (*e.g.,* what McNeal was told and whether Garda Security paid premiums for McNeal's coverage), these statements would appear to be based on first-hand knowledge as they refer to Gladney's own actions and conversations to which she was a party.

8

persuasive. Like most employee benefit plans, the Plan at issue in this action has a waiting period before coverage becomes effective. Specifically, the Plan and Certificates of Coverage (incorporated into the SPD) provide that employees are eligible for coverage at 12:01 a.m. on the day they complete their waiting period and define the waiting period as ending on the "[f]irst of the month coincident with or next following 30 days of continuous active employment." Because McNeal died only seven days after beginning his employment, he necessarily did not satisfy this waiting period. Consequently, McNeal's employer, Garda Services, had no obligation to pay a premium to secure coverage and the Plan's insurer, Unum, had no obligation to provide coverage (whether or not the premium was paid).

Gladney does not challenge the authenticity or applicability of the documents containing the thirty-day waiting period. She does, however, challenge the enforceability of the waiting period because it was not included or referenced in the "handbook" provided to McNeal. Her full argument on this point is as follows:

> The Defendant[s] contend[] that the Plaintiff's husband was ineligible for benefits due to the document titled Benefits at a Glance [which] states that there is a 30 day waiting period. The Claim information also does not contain a waiting period of 30 days. [Citing Dkt. No. 18-4.] Therefore a genuine issue of material fact exists as to the matter regarding a time frame of waiting.

Dkt. No. 18 at 8.[12]

Gladney's argument is, in essence, that Defendants should be estopped from enforcing the Plan's express waiting period provision because that limitation is not included in a summary

---

[12] It is not clear what Gladney means by her reference to "Claim information." The referenced exhibit does not include any section on how to make a life insurance (or other) claim. In any event, Gladney's reference to the Claim information relates only its failure to mention a waiting period. There is no suggestion that the "Claim information" includes any affirmative statement that there is no waiting period. Also, although mentioned in her affidavit, Gladney does not purport to rely on any oral statements to her husband regarding the effective date of coverage. Such an oral assurance would, in any event, be ineffective to modify the terms of the plan. *See infra* (discussion of estoppel theory).

9

document given to the employee. The Fourth Circuit has consistently rejected similar attempts to expand coverage beyond the written terms of an ERISA plan based on oral or informal statements. *See, e.g., HealthSouth Rehabilitation Hosp. v. American Nat. Red Cross*, 101 F.3d 1005, 1009 (4th Cir. 1996) (noting that ERISA fiduciary's "oral statements . . . would be insufficient to modify the terms of an established ERISA plan"); *Biggers v. Wittek Indus., Inc.*, 4 F.3d 291 (4th Cir. 1993) (holding that "oral and informal amendments to established ERISA plans are completely incapable of altering the specified terms of the plan's written coverage"). The court has not only applied this rule in determining whether particular benefits are available, but in determining whether a particular individual is covered under the plan at issue. *See Mullins v. Blue Cross & Blue Shield of Va.*, 79 F.3d 380 (4th Cir. 1996) (affirming judgment for plan on standing grounds because plaintiff was never a participant despite the fact that she was listed on the enrollment list and that premiums were timely paid on her behalf on a group insurance policy because the policy clearly stated that only full-time active employees were covered and plaintiff was not a full-time active employee of a covered employer); *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54 (4th Cir. 1992) (rejecting reliance on estoppel theory to create coverage based on insurer's erroneous authorization of hospital stay where allowance of coverage would be contrary to written plan terms). *See also Phoenix Mutual Life Ins. Co. v. Adams*, 30 F.3d 554, 565 (4th Cir. 1994) (allowing doctrine of substantial compliance for beneficiary changes but distinguishing situation in which a beneficiary relies on "an equitable theory to establish liability on the part of the [plan or insurer] when the written terms of the ERISA plan provide otherwise").

The only "estoppel" theory recognized under ERISA applies when (1) two formal plan documents (such as the SPD and Plan itself) are in conflict; *and* (2) the participant has relied on or

10

been prejudiced by the more generous document. *See, e.g., Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473 (4th Cir. 1996) (holding that participant must show "he either relied upon or was prejudiced by" the representations in the SPD before he can rely on an inconsistency between the SPD and the plan); *Hendricks v. Central Reserve Life Ins. Co.,* 39 F.3d 507 (4th Cir. 1994) (stating that "if there is a conflict between the complexities of the plan's language and the simple language of the SPD, the latter will control *if* the participant relied on the SPD or was prejudiced by it."–emphasis added).

Gladney's arguments cannot satisfy these requirements for several reasons. First, what she purports to rely on is not a conflict between two formal plan documents (such as the plan itself and an SPD) but the *silence* of an informal summary document in the face of an express limitation in other plan documents. This would not be enough to present a "conflict" even if the document on which Gladney relies is deemed an SPD or other formal plan document.[13] Second, Gladney has failed to allege any facts which would suggest reliance or prejudice as a result of the informal summary's failure to disclose the waiting period.[14] While not determinative, it is of some note here that the limitation at issue, a short waiting period, is not at all unusual with employee benefits.

---

[13] It is doubtful the document on which Gladney relies would be deemed an SPD given the dual disclaimers of this status found in the document itself. Gladney has, in any event, failed to challenge the authenticity or applicability of the documents Defendant identifies as the SPD, incorporated Certificates of Coverage, and Plan.

[14] Defendants did not refer to the estoppel limitations until their reply brief. Gladney might not, therefore, have anticipated this argument in preparing her opposition memorandum and supporting affidavit. The court has, therefore, considered not only averments in Glandney-McNeal's affidavit, but also factual allegations in the complaint in addressing this argument.

**CONCLUSION**

For the reasons set forth above, the court finds that Defendants are entitled to judgment on the merits. The court, therefore, directs entry of judgment in favor of both Defendants. The court further concludes that the facts of this case do not warrant an award of attorneys' fees to either party.

IT IS SO ORDERED.

                                              s/ Cameron McGowan Currie
                                              CAMERON MCGOWAN CURRIE
                                              UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
February 18, 2009